**STATE ex rel. EARNEST et ux.**

v.

**MERIWETHER et al.**

No. 43970.

Supreme Court of Missouri.

En Banc.

Aug. 2, 1954.

Roy Hamlin, Hannibal, for relators.

Rendlen & Rendlen, Hannibal, for respondents.

HOLLINGSWORTH, Judge.

This is an original proceeding to prohibit Honorable Roy B. Meriwether, Judge of the Hannibal Court of Common Pleas, from ordering a change of venue from that court to the Circuit Court of Schuyler County of two petitions seeking the adoption of Sandra Lee Greenwood, a female minor; and to prohibit the Clerk of the Hannibal Court of Common Pleas from transmitting the records in said cases to said Circuit Court.

The relators, William R. Earnest and Maude Earnest, are Sandra's maternal grandparents. Sandra is the child of Irene (Earnest) Greenwood and her husband, Guy Greenwood, who were divorced subsequent to Sandra's birth. Sandra's mother died on August 29, 1952. Prior to and since the death of her mother, Sandra has been in the custody of relators, both of whom reside within the jurisdiction of the Hannibal Court of Common Pleas.

On the 16th day of September, 1952, one of the relators herein, Maude Earnest, filed in the Hannibal Court of Common Pleas her petition for the adoption of Sandra. Writs of summons were issued and served upon Sandra and Sandra's father, Guy Greenwood. While that petition (hereinafter referred to as the first petition) remained pending and unheard, Joe E. Greenwood (a brother of Sandra's father) and his wife, Edna, of Dallas, Texas, on November 29, 1952, filed in said Court of Common Pleas their joint petition seeking the custody of Sandra for the purpose of adopting her as their child after she had remained in their custody for a period of at least nine months, as is authorized by Sections 453.010–453.170 RSMo 1949, V.A.M.S., and especially §§ 453.110 and 453.080, relating to the adoption of children. Both Sandra's father and relators herein pleaded to the

merits of that petition, which will be hereinafter referred to as the second petition.

Thereafter, on July 2, 1953, in accord with the provisions of Section 508.090 RSMo 1949, V.A.M.S., relators filed an application for a change of venue of the second petition, alleging that the respondent judge was prejudiced against them and that they could not obtain a fair and impartial trial before him on that petition. Thereafter, on the same day, said respondent, acting in accord with the provisions of Section 508.140 RSMo 1949, V.A.M.S., ordered the venue of the second petition changed to the Circuit Court of Schuyler County and, over the protest of relators, further held that the essential question involved in both petitions was the welfare of the child, Sandra, which he believed could not be adequately decided by the consideration and hearing of one of the petitions, but only after both had been heard, and ordered that both proceedings be transferred to Schuyler County, there to be tried and determined as one action.

Two propositions of law are presented by the briefs filed in and the oral arguments made before this court:

(1) Relators assert and respondent judge denies that respondent acted in excess of his jurisdiction in ordering the consolidation of the two petitions for adoption;

(2) Relators assert and respondent judge denies that respondent judge exceeded his jurisdiction in transferring the second petition (or both of them if it be determined they are essentially one action) to the Circuit Court of Schuyler County, but that he should have either requested this court to transfer, or he should have called in, another judge to sit in his stead, as provided by Article V, §§ 6 and 15, of the Constitution, V.A.M.S., and Supreme Court Rule 11, 42 V.A.M.S.

We are not here called upon to decide what might be the situation were rival petitions filed in different courts for the adoption of the same child, as possibly could be the case under § 453.010 of the adoption statutes, which fixes the venue of such actions in the circuit court of the county (1) in which the person seeking to adopt resides, or (2) in which the person sought to be adopted may be. The petitions involved here were filed in the same court. Both seek to change the legal status of the same child. Both cannot be sustained. The sustention of one necessarily denies the sustention of the other. In both the primary issue is the welfare of the identical child.

■ "The jurisdiction of the court in adoption proceedings is said to spring from the duty of the state as parens patriæ to protect and control the interest of the adopted child, as the child is considered a ward of the court, and in determining whether or not to grant a petition of adoption, as long as the natural parent's right to the child is not unreasonably disregarded, the welfare of the child is of primary importance. * * *

■ "In determining whether to grant the adoption, the court should hear those persons, if they wish to produce testimony, who resist the adoption on the ground that it would not promote the welfare of the child." 2 C.J.S., Adoption of Children, § 39 b (1), p. 425.

Our adoption statutes seem clearly to assume that one court shall have jurisdiction of this quasi-guardian and ward relationship. Section 453.030(1) provides: "In all cases the approval of the court of the adoption shall be required and such approval shall be given or withheld as the welfare of the person sought to be adopted may, in the opinion of the court, demand." Section 453.070 provides: "No decree for the adoption of a minor child shall be entered nor shall transfer of custody of such a child to the petitioner or petitioners in such adoption petition be ordered by the juvenile court having jurisdiction, until a full investigation has been made of the physical and mental conditions and antecedents of such child for the purpose of ascertaining whether the child is suitable for adoption and of the suitability of the petitioner or petitioners as parents for the child. Such investigation shall be made, as directed by the court having jurisdiction, * * *."

It is readily apparent that if the wardship of Sandra were to be split or divided between two courts, one of which is limited in jurisdiction to determine solely the fitness of the first petitioner and the other is likewise limited to determine solely the fitness of the second petitioners to adopt her, neither court can, in the ultimate best interest of Sandra's welfare, determine which (if either) should be sustained. If the petitions were to be heard by different judges, and both should be sustained, which well might happen if each court found the petitioner or petitioners were fit persons to adopt Sandra and had not the jurisdiction to adjudge the relative fitness of the other petitioner or petitioners, a deplorable and intolerable result would occur. We would have two sets of adoptive parents with duties they could not possibly jointly perform and a child with filial obligations to each set of parents which, by reason of conflict, she could not possibly render. Obviously, some means would have to be taken to nullify one or the other of such decrees.

■ We are convinced that respondent judge did not err in holding that the petitions were in effect but one action and in further holding that, after being disqualified to hear and determine the second petition, he was also disqualified to hear and determine the first. Certainly, if he was prejudiced against relators as to the issues presented under the second petition, he was also prejudiced against them as to the issues presented under the first (Maude Earnest's) petition.

■ But we must hold that the respondent judge did exceed his jurisdiction in ordering the transfer of each and both petitions to the Circuit Court of Schuyler County. In the case of State ex rel. Creamer v. Honorable Sam C. Blair, Judge, Mo.Sup., 270 S.W.2d 1, this court en banc held that Sections 508.090 and 508.140 RSMo 1949, V.A.M.S., authorizing a change of venue of an action in which the judge was disqualified, were nullified and superseded to the extent they were in conflict with Article V, §§ 6 and 15, of the Constitution adopted in 1945. Consequently, the aforesaid petitions remain in the Hannibal Court of Common Pleas to be tried as one case by a judge selected by one of the methods provided in Article V, §§ 6 and 15, aforesaid.

The preliminary rule in prohibition is made absolute.

CONKLING, C. J., and HYDE, DALTON and LEEDY, JJ., and BENNICK and CAVE, Special Judges, concur.